UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                       :

UNITED STATES OF AMERICA,           :      18-CR-32(1) (ARR)
                       :

     -against-                :      NOT FOR ELECTRONIC
                       :      OR PRINT PUBLICATION
MICHAEL CRUMBLE,             :
                       :

             *Defendant*.    :      **OPINION & ORDER**
                       :
-------------------------------------------------------------------- :
                       X

ROSS, United States District Judge:

      Defendant, Michael Crumble, moves for a sentence reduction under 18 U.S.C. § 3582(c), also known as compassionate release, given the COVID-19 pandemic, the active outbreak of the virus at his facility, and his multiple comorbidities. Def.'s Corrected Mot. Compassionate Release 18–21 ("Def.'s Mot."), ECF No. 197. The government opposes, noting the severity of Mr. Crumble's offense and the fact that he has served less than half of his sentence. Gov't's Opp'n Compassionate Release 11–12 ("Gov't's Opp'n"), ECF No. 198. While I find Mr. Crumble has shown extraordinary and compelling reasons supporting his release, those reasons do not outweigh the 18 U.S.C. § 3553(a) factors here. Thus, I deny the instant motion.

## BACKGROUND

### *Conviction and Sentencing*

      On May 14, 2018, Mr. Crumble was convicted by a jury of kidnapping conspiracy, in violation of 18 U.S.C. § 1201(c), kidnapping, in violation of 18 U.S.C. § 1201(a)(1), and committing violence in furtherance of an extortion plan, in violation of 18 U.S.C. § 1951(a). Verdict Sheet, ECF No. 106; J. Crim. Case 1, ECF No. 170. These convictions stemmed from the

December 2017 kidnapping and robbery of a heroin trafficker, which Mr. Crumble planned and executed. Pre-Sentence Report ¶¶ 9–22 ("PSR"), ECF No. 129 (filed under seal). His co-conspirators brutally harmed the victim by pistol-whipping him, smashing a glass in his face, and burning his arms with iron, but Mr. Crumble did not inflict any violence himself. *Id.*; Def.'s Mot. 4. Mr. Crumble has a previous state robbery conviction and two parole violations connected to it. PSR ¶ 72.

Mr. Crumble had not wanted to proceed to trial. Def.'s Mot. 4. He would have accepted the government's plea offer of ten years' imprisonment, which was contingent upon his co-defendant also accepting, but his co-defendant refused. *Id.* at 3–4. Taking this into account, after trial I sentenced Mr. Crumble to 108 months' imprisonment and five years' supervised release, far below the Sentencing Guidelines range of 262 to 327 months' imprisonment. J. Crim. Case 2–3; Sentencing Tr. 2, ECF No. 171-1 (filed under seal); Gov't's Sentencing Mem. 4, ECF No. 156. I also considered Mr. Crumble's family ties to his fiancée and two young children and found that Mr. Crumble demonstrated "sincere remorse for his conduct." Sentencing Tr. 2.

### *BOP Custody*

Mr. Crumble has been incarcerated since his arrest on February 6, 2018. Def.'s Mot. 3. He first spent eighteen months at the Metropolitan Detention Center ("MDC") in Brooklyn then was transferred to F.C.I. Schuylkill in Pennsylvania in late summer 2019. *Id.* at 10–11. Mr. Crumble claims he experienced "physical[], emotional[], psychological[], [and] mental[]" pain while at MDC, including suffering through a four-month power outage in spring 2019. Letter from Mr. Crumble, Def.'s Mot., Ex. G, ECF No. 196-1; Def.'s Mot. 11. There, however, he completed a class on alternatives to drug dealing and received a certificate to teach the course. Def.'s Mot. 13. While at Schuylkill, he largely has been unable to participate in programming, which is suspended

due to the COVID-19 pandemic. Def.'s Mot. 21–22. Nevertheless, Mr. Crumble has returned to church while incarcerated and hopes to volunteer with his local church if released through hosting small events like a breakfast for seniors and a men's group and ultimately founding a nonprofit for at-risk youth. Letter from Mr. Crumble, Def.'s Mot., Ex. H, ECF No. 196-1. Mr. Crumble has remained close to his family. Def.'s Mot. 24. His mother in Albany has offered to support him financially if he is released. Letter from Sonya Crumble, Def.'s Mot., Ex. L, ECF No. 196-2. His aunt also has offered to help him launch his non-profit. Letter from Petrina Wilson, Def.'s Mot., Ex. L.

### *COVID-19*

F.C.I. Schuylkill is experiencing a dangerous COVID-19 outbreak. It reported its first positive case on December 4, 2020. Def.'s Mot. 9. As of December 18, 2020, it reported 206 active cases among less than 900 prisoners. *Id.*; *see FCI Schuylkill*, BOP, https://www.bop.gov/locations/institutions/sch/ (last visited Jan. 25, 2021) ("BOP Schuylkill"). As of January 6, 2021, active cases had fallen to fifty-four, Gov't's Opp'n 8, but rose again to eighty-one as of January 21, 2021, Def.'s Reply 4, ECF No. 202. The BOP reports ten active cases as of January 25. *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus (last visited Jan. 25, 2021) ("BOP COVID-19 Cases"). In total, roughly one-third of the prison population at Schuylkill has tested positive for COVID-19. *See id.* (noting 255 total positive tests); BOP Schuylkill (noting 874 total prisoners).

Mr. Crumble has three underlying conditions that make him more vulnerable to serious complications from COVID-19: chronic kidney disease stage 1, asthma, and hypertension. Medical Records, Def.'s Mot., Ex. I, ECF No. 196-2. The CDC has classified chronic kidney disease "of any stage" as a comorbidity that "increases your risk for severe illness from COVID-

19." *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#chronic-kidney-disease (last visited Jan. 25, 2021) ("CDC Guidelines"). The CDC has classified both asthma and hypertension as comorbidities that "might" increase a person's risk for severe illness from COVID-19. *Id.* "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.*

### Procedural History

Mr. Crumble petitioned the Schuylkill warden for a sentence reduction on April 19, 2020, and the warden denied that request on May 1, 2020. Inmate Request to Staff Response, Def.'s Mot., Ex A, ECF No. 196-1. Mr. Crumble's administrative appeals also were denied. *Id.* Mr. Crumble filed his motion for compassionate release on December 30, 2020. Def.'s Mot. 29. The government filed its opposition on January 6, 2021, Gov't's Opp'n 1, and Mr. Crumble filed his reply on January 21, 2021, Def.'s Reply 1.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A); *see United States v. Cato*, No. 16-

CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (noting a defendant bears the burden of proof). "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *Cato*, 2020 WL 5709177, at *3 (internal quotation marks omitted).

Accordingly, in determining what constitutes "extraordinary and compelling reasons," a district court has "discretion" to consider "the full slate" of arguments that defendants present to support a sentence reduction. *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* at 238 (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, *see id.* at 237, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sentencing Comm'n, U.S. Sentencing Guidelines Manual § 1B1.13 cmt. 1(A)(i) (2018) ("U.S.S.G."). Second, "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii). In any scenario, "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in

order to warrant a reduction in the term of imprisonment." *Id.* cmt. 2.

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C. §

3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics
>     of the defendant;
> (2) the need for the sentence imposed—
>> (A) to reflect the seriousness of the offense, to promote respect for the law,
>>     and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training,
>>     medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . . .
> (5) any pertinent [Sentencing Commission] policy statement . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with
>     similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

A sentence reduction is consistent with the Sentencing Commission's policy statements if

"[t]he defendant is not a danger to the safety of any other person or to the community, as

provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely

duplicative of those in § 3553(a), but they also include "whether the offense is a crime of

violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

## DISCUSSION

### I.   Mr. Crumble Has Shown Extraordinary and Compelling Reasons Supporting Release.

Defendant presents four grounds for finding that extraordinary and compelling reasons

support his release: (1) his medical conditions that increase his risk of severe complications from

COVID-19 and the ongoing outbreak of the virus at Schuylkill; (2) extra punitive conditions at

MDC and Schuylkill; (3) his rehabilitation efforts; and (4) his reentry plan.[1] Def.'s Mot. 18–25.

      As many courts have held, the COVID-19 pandemic combined with a defendant's high-risk conditions recognized by the CDC may constitute extraordinary and compelling reasons for sentence reduction, especially when a defendant's facility is experiencing an outbreak.[2] *See Cato*, 2020 WL 5709177, at *4 (collecting cases); *see also, e.g.*, *United States v. Mongelli*, No. 02-CR-307 (NGG), 2020 WL 6449237, at *3 (E.D.N.Y. Nov. 3, 2020) (relying on severity of outbreak at Fort Dix). This is in part because "[t]he nature of prisons – crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products – put those incarcerated inside a facility with an outbreak at heightened risk."[3] *United States v. Park*, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020).

      Mr. Crumble is incarcerated at a facility experiencing a significant COVID-19 outbreak,

---

[1] Both parties agree that Mr. Crumble has satisfied Section 3582's exhaustion requirement, Gov't's Opp'n 9 n.2; Def.'s Mot. 18, so I will proceed directly to the merits.

[2] The government's cases to the contrary are inapposite because none involved a large outbreak at the defendant's facility and all but one of these courts determined that reentry into the community would create additional risk. *See United States v. Ng Lap Seng*, 459 F. Supp. 3d 527, 544 (S.D.N.Y. 2020) (noting no evidence of COVID-19 outbreak at facility and high community spread in New York City); Op. & Order 11, *United States v. Baker*, No. 97-CR-877 (DRH), ECF No. 346 (E.D.N.Y. Apr. 21, 2020) (noting no evidence of COVID-19 outbreak at facility and heightened risk if the defendant lived with her daughter, a paramedic for the New York City Fire Department); *United States v. Garcia*, 460 F. Supp. 3d 403, 409 (S.D.N.Y. 2020) (noting defendant's facility has not "seen a massive outbreak" and Mr. Garcia's "personal history suggests that he will not take care of himself or behave in a manner that would lessen the possibility of his exposure to the virus" while at liberty); Op. & Order 7–8, *United States v. Collier*, No. 12-CR-6003 (CJS), ECF No. 68 (W.D.N.Y. May 8, 2020) (providing no information about COVID-19 cases at the defendant's facility).

[3] The government spends pages detailing the BOP's response to COVID-19, Gov't's Opp'n 6–9, but that plan largely has failed. *See A State-by-State Look at Coronavirus in Prisons*, The Marshall Project, https://www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons (last visited Jan. 25, 2021) (noting that as of January 22, 2021 44,957 people have contracted COVID-19 in federal custody).

and he has multiple medical conditions that increase his risk of complications from contracting the virus. While Schuylkill's active cases have decreased to ten since their peak of over 200 in mid-December, that does not guarantee that the outbreak is contained. Def.'s Mot. 9; Def.'s Reply 4–5; BOP COVID Cases. At Fort Dix, for example, cases decreased from 238 on November 17, 2020 to fifteen on December 18, 2020, but then rose again to 797 as of January 11, 2021. *See United States v. Mathis*, No. 02-CR-891 (ARR), 2020 WL 6784136, at *2 (E.D.N.Y. Nov. 18, 2020); *United States v. Lytch*, No. 02-CR-891 (ARR), 2020 WL 7488880, at *2 (E.D.N.Y. Dec. 21, 2020); George Woolston, *"Clear and present danger": U.S. Rep. Kim calls for FCI Fort Dix lockdown as cases top 800*, Burlington County Times (Jan. 11, 2021), http://www.burlingtoncountytimes.com/story/news/2021/01/11/u-s-rep-kim-calls-fci-fort-dix-lockdown-cases-top-800/6632119002/. Moreover, Mr. Crumble has chronic kidney disease stage one, which the CDC has determined increases a person's risk of severe complications from COVID-19.[4] *See* Medical Records; CDC Guidelines. He also suffers from asthma and hypertension which might increase his risk of complications, and the combination of all three conditions is even worse. *Id.* Thus, I find Mr. Crumble has met his burden of showing extraordinary and compelling reasons supporting his release.

I also note Mr. Crumble's rehabilitation efforts and reentry plan as facts supporting release. Mr. Crumble remains close to his family and has deepened his faith while incarcerated. Letter from Mr. Crumble, Def.'s Mot., Ex. H. He also has noble goals to volunteer in his community upon his release. *Id.* However, neither of these grounds constitutes an extraordinary and compelling reason in itself.

---

[4] The government's attempt to downplay Mr. Crumble's kidney disease because it is at stage one fails. Gov't's Opp'n 9. The CDC has emphasized that kidney disease "of any stage" increases a person's risk of severe illness from COVID-19. CDC Guidelines.

Finally, while I recognize Mr. Crumble's time in BOP custody has been particularly difficult, given the power outage at MDC and the COVID-19 pandemic at Schuylkill, as the government notes, everyone incarcerated at these facilities experienced those same conditions. Gov't's Opp'n 10. Thus, I do not give any weight to this proposed ground.

## II.   The Section 3553(a) Factors Outweigh the Reasons for Mr. Crumble's Release.

Although I find Mr. Crumble met his burden of showing extraordinary and compelling reasons supporting his release, these reasons do not outweigh the Section 3553(a) factors. First, the circumstances of Mr. Crumble's offense were heinous. While Mr. Crumble did not inflict any violence himself, he planned and executed a kidnapping in which his co-defendants pistol-whipped the victim, smashed a glass in his face, and burned his arms with an iron. PSR ¶¶ 14–16. He also has a previous state robbery conviction and two parole violations. *Id*. ¶ 72. Second, the lowest end of Mr. Crumble's guidelines range was 262 months,[5] Gov't's Sentencing Mem. 4, more than twice his original sentence and more than four times the current length of his incarceration.[6] *See United States v. Marquez*, No. 12-CR-712 (SHS), 2021 WL 200005, at *2 (S.D.N.Y. Jan. 20, 2021) (finding the Section 3553(a) factors outweigh high-risk medical conditions where the defendant had served sixty-five percent of original sentence that was "far below the recommended guidelines range"). Third, reducing Mr. Crumble's sentence by more than half would result in an unwarranted

---

[5] Defendant claims "the applicable Guidelines range" is not "a relevant consideration," Def.'s Reply 5 n.3, but Section 3553(a)(4) explicitly states that it is.

[6] Defendant argues that I should credit him with more time than he already has served because punitive prison conditions have made his sentence more severe. Def.'s Reply 5–6 (citing *United States v. Rodriguez*, No. 00-CR-761(2) (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020)). Even taking those conditions into account, Mr. Crumble's time served still would not come close to his original sentence, let alone the applicable guidelines range. While I recognize that the court in *United States v. Davies* released a high-risk defendant who had served less than half his sentence, that defendant was significantly older than Mr. Crumble and had not been convicted of a violent crime. 469 F. Supp. 3d 175, 176, 178 (S.D.N.Y. 2020).

sentence disparity between him and his co-defendant, Ramell Marcus, who is serving a 180-month sentence. J. Crim. Case, *United States v. Markus*, No. 18-CR-32(2) (ARR), ECF No. 165 (E.D.N.Y. May 8, 2019).

Finally, a sentence of time served would not reflect the seriousness of Mr. Crumble's offense, although I agree with defendant that he may obtain better educational or vocational training and medical care outside of BOP custody. Mr. Crumble's nine-year sentence already was generous. I departed so drastically from the guidelines because I considered Mr. Crumble's family circumstances, sincere remorse, and acceptance of responsibility. Sentencing Tr. 2. I recognize that Mr. Crumble remains close to his family and has taken strides toward rehabilitation, but his original sentence already reflects these facts. *See Ng Lap Seng*, 459 F. Supp. 3d at 541 (finding even given the pandemic that the defendant's circumstances had not changed "so dramatically so as to warrant a sentence of time served" when original sentence departed significantly from guidelines range).

Balancing the Section 3553(a) factors against Mr. Crumble's extraordinary and compelling reasons for release, I find his risk of severe complications from COVID-19 does not outweigh the need for just punishment in this case. I do not underestimate the dangers of the virus to people with underlying health problems or the BOP's failed response to contain it. But I cannot justify reducing Mr. Crumble's sentence for a gruesome kidnapping to less than three years.[7]

## CONCLUSION

For the foregoing reasons, Mr. Crumble's motion for compassionate release is denied.

SO ORDERED.

---

[7] Because I determined that the Section 3553(a) factors outweigh the extraordinary and compelling reasons for Mr. Crumble's release, I need not evaluate whether defendant poses a danger to the community.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:        January 25, 2021
              Brooklyn, New York